

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CPK:BTR                                               *610 Federal Plaza*
F.#2018R01075                                         *Central Islip, New York 11722*

**BY ECF AND HAND**                                   November 15, 2018

The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
1044 Federal Plaza
Central Islip, New York 11722-4454

      Re:    United States v. Enayatullah Khwaja, et. al.
                 Docket No. 18-CR-607(JFB)

Dear Judge Bianco:

      The United States respectfully submits this letter regarding the bail hearing for defendants Enayatullah Khwaja, also known as "Nat," Abdulrahman Khwaja, Rana Rahimi and Shikeba Rhamatzada (the "defendants" or referred to individually as needed for context), on the above-referenced indictment (the "Indictment"). The government requests that a permanent order of detention be issued because the defendants are a flight risk and danger to the community. Each of the defendants, all members of the Khwaja Family, pose a flight risk as they possess the means and support system, both here in the United States and overseas, and the incentive to flee. Their incentive to flee, given the volume of illicit criminal proceeds laundered is magnified by the likely guideline range, life imprisonment. That guideline range could also result in consecutive sentences for the defendants of 35 years or more.

      The defendants also pose a danger to the community as the multi-year, multi-million dollar scheme they organized and conducted was designed to promote both illegal narcotics distribution and related financial crimes throughout the United States. It is clear that, if released, the defendants will continue to victimize the community, until such time as they flee the jurisdiction of the Court.

    I.      **SUMMARY OF PENDING CHARGES**

      Enayatullah Khwaja, one of the leaders of this scheme, was indicted on charges of conspiracy to commit money laundering, unlicensed money remitting, structuring, failure to

file a report (2 Counts), and interstate and foreign transportation in aid of racketeering enterprises. He faces a maximum exposure of 65 years imprisonment.

Abdulrahman Khwaja, another leader of the scheme, is charged with conspiracy to commit money laundering, structuring, and interstate and foreign transportation in aid of racketeering enterprises. Each faces a maximum exposure of 35 years imprisonment.

Rana Rahimi and Shikeba Rhamatzada maintained the books and records of these intertwined companies and orchestrated the multiple unnecessary paper transfers in order to layer and hide the nature, source and ownership of the monies received in this operation. They are charged with conspiracy to commit money laundering, structuring, and interstate and foreign transportation in aid of racketeering enterprises. Each faces a maximum exposure of 35 years imprisonment.

In addition, the indictment contains forfeiture allegations regarding the forfeiture of 21 bank accounts and three real properties.

### Risk of Flight

Enayatullah Khwaja, Abdulrahman Khwaja, Rana Rahimi and Shikeba Rhamatzada pose a risk of flight to Saudi Arabia, Paraguay, or another foreign country where they could use the family's assets, foreign contacts, and skill at developing financial schemes to defy court orders and to hide from this Court. Each has a significant incentive to escape this Court's jurisdiction because of the lengthy sentence they likely face if convicted.

Enayatullah Khwaja and Abdulrahman Khwaja have taken nine international trips this year and have significant business and family ties to Saudi Arabia. Enayatullah Khwaja has obtained a permanent residency card in Saudi Arabia. He has also sought to invest in real estate there. The Khwaja family owns an import and export business that operates out of Saudi Arabia. Under these circumstances, the defendants each pose a risk of flight and no condition or combination of conditions can reasonably assure their appearance. They should be detained.

### Danger to the Community

Enayatullah Khwaja and Abdulrahman Khwaja pose a danger to the community because of their propensity to commit financial crimes such as laundering money for drug trafficking organizations and other illicit organizations. The indictment, which covers the period of October 2013 to October 2018, alleges that these defendants laundered money through their import and export businesses. This analysis is based on lengthy electronic surveillance of the defendants, custom border searches of their phones and extensive financial analysis of their customs, personal and business banking records and numerous undercover dealings with the defendants' companies as well as debriefings of co-conspirators.

Enayatullah Khwaja orchestrated bulk-cash pick-ups in the United States from customers, sanctioned by the Argentinian government in 2018 for suspicion of terrorism financing. Enayatullah Khwaja received bulk currency in hotel parking lots in Melville, NY on at least a dozen occasions. Additionally, Enayatullah Khwaja received bulk currency from an HSI undercover agent purporting to be the transfer of illegal drug sale proceeds.

Enayatullah Khwaja orchestrated his business finances to evade the currency reporting requirements and money laundering laws of the United States, by structuring a total of approximately $3,208,146 into his numerous bank accounts. During the course of the conspiracy, Enayatullah Khwaja laundered approximately $32,470,000 in third-party transactions through his companies, which were funded by illicit proceeds in the United States and whose proceeds were returned to South America.

Abdulrahman Khwaja and his co-conspirators structured a total of approximately $10,300,000 through his companies' bank accounts. On, at least, thirteen occasions, Abdulrahman Khwaja's companies received wires as a result from either a DEA or HSI money operation in which agents, acting undercover, were directed by drug dealers to transport money from drug sales by the drug dealer to Abdulrahman Khwaja's companies in order to have the monies sent to South America. Abdulrahman Khwaja's companies also received approximately $110,257,000 in third-party transactions, which were funded by illicit proceeds. Abdulrahman Khwaja also received approximately $369,000 in structured postal money orders, most of which were received from the Southwest border area from Mexican Drug Cartel related sources.

Abdulrahman Khwaja while being stopped at the United States border once offered a bribe to Customs agent and FDA inspector.

Under these circumstances, based on Enayatullah Khwaja and Abdulrahman Khwaja's affiliations, connections overseas, and willingness to launder illicit proceeds, they poses a danger to the community and no condition or combination of conditions will reasonably assure their appearance. They should be detained.

**RELEVANT LEGAL STANDARDS FOR DETENTION**

"The Bail Reform Act authorizes pretrial detention upon the court's finding that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Agnello, 101 F. Supp. 2d 108, 109 (E.D.N.Y. 2000) (quoting 18 U.S.C. § 3142(e)). At a detention hearing, the Court shall consider, among other factors, "the available information concerning—"

(1) The nature and circumstances of the offense charged;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person;

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Detention may be ordered on risk-of-flight or risk-of-obstruction grounds if the government establishes such grounds by a preponderance of the evidence. United States v. English, 629 F.3d 311, 319 (2d Cir. 2011); United States v. Chimurenga, 760 F.2d 400, 405-06 (2d Cir. 1985); United States v. Berger, 2006 U.S. Dist. LEXIS 55844, at *6 (E.D.N.Y. Aug. 9, 2006). Detention may be ordered on dangerousness grounds if the government establishes such grounds by clear and convincing evidence. See 18 U.S.C. § 3142(f)(2). The rules governing admissibility of evidence at trial, however, do not apply in a detention hearing. Id.; Fed. R. Evid. 1101(d)(3). Accordingly, the government submits this evidence by way of proffer. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing) (citing United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

## **THE DEFENDANTS SHOULD BE DETAINED**

### **Risk of Flight**

The defendants pose a risk of flight to Saudi Arabia or another foreign country where they could use overseas assets, foreign contacts, and skill at developing complex schemes to defy court orders and to hide from this Court. Each defendant has a significant incentive to escape this Court's jurisdiction because of the lengthy sentence they likely face if convicted.

First, the defendants appear to have significant assets that would allow him to financially support himself outside the Court's jurisdiction. Their money laundering scheme generated millions of dollars in cash, much of which is unaccounted for. Where the amount involved in a financial crime case cannot be accurately determined, courts have erred on the side of caution and ordered the defendants detained. See United States v. Londono-Villa, 898 F.2d 328, 329-30 (2d Cir. 1990) (reversing release on bail based on flight risk where bail proposed amounted to much less than the money potentially involved in the crime); United States v. Amico, 2006 U.S. Dist. LEXIS 60996, at *8-9 (W.D.N.Y. 2006) (defendant found to be a flight risk where large amounts of money went unaccounted for in fraud scheme); United States v. Lugo-Rios, 2006 U.S. Dist. LEXIS 49657, at *10-11 (D.P.R. 2006) (defendants found to be a flight risk where the amount of money stolen from health care scheme could not be determined). During the time frame of the scheme, the defendants regularly deposited hundreds of thousands of dollars in cash into their bank account, but that money was likely only part of the cash they received from the scheme.

Large amounts of money were sent to Paraguay and other foreign sites. Evidence indicates that the defendants control potentially hundreds of millions of dollars, large portions of which appear to be held in foreign banks and investments, which is consistent with their receipt of millions of dollars in cash and their affiliations with foreign nationals. These significant funds provide the defendants the opportunity and means to finance flight. See United States v. Shelikhov, 468 F. App'x 54, 56 (2d Cir. 2012) (affirming detention where defendant "had both a strong motive to flee and the means to finance flight"); United States v. Sabhani, 493 F.3d 63, 76 (2d Cir. 2007) ("[A] second factor strengthens the case for detention: defendants' ample means to finance flight.").

Second, the defendants had extensive contacts with a Paraguayan national, who was involved in drug money laundering. Some of the foreign nationals are co-conspirators who would have a strong personal incentive to assist the defendants escape from United States custody.

Finally, the defendants have a strong incentive to flee to avoid a lengthy prison term. The evidence against them is strong: it includes wiretap conversations, encoded Whats App conversations, witnesses and financial records. The evidence will show that the defendants ran a trade-based money laundering operation and laundered the proceeds for third-parties crimes. Where the evidence of guilt is strong, as here, it provides "a considerable additional incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see United States v. Berkun, 392 F. App'x 901, 903 (2d Cir. 2010) ("Because the evidence of guilt is strong, it provides Berkun with an incentive to flee.").

Here, the defendants have a strong incentive to flee as their guideline range is likely to be life imprisonment. That guideline range results because the defendants laundered well in excess of $25 million; they used sophisticated means (a complex web of shell companies; they organized criminal activity with at least five participants; he lied to the CPS in a compliance audit. The possibility of a severe sentence is an important factor in assessing the defendant's incentive to flee. See United States v. Khusanov, 2018 U.S. App. LEXIS 9947, at *3 (2d Cir. Apr. 20, 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Jackson, 823 F.2d 4, 6 (2d Cir. 1987) (flight risk because of "indictment under which the defendant faces at least ten years of imprisonment"); Martir, 782 F.2d at 1147 (defendants charged with serious offense whose maximum combined terms created potent incentives to flee).

Under these circumstances, the defendants pose a risk of flight and no condition or combination of conditions will reasonably assure their appearance. They should be detained.

**Danger to the Community**

A judge may detain a defendant if that defendant's release "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(e). The Bail Reform Act's concept of dangerousness, while creating a presumption in cases of violent crimes and

narcotics distribution, is not limited to such cases and may in some instances also encompass so-called white-collar frauds. A defendant may be found to pose a danger to the community not only when he commits acts of violence but when he is likely to commit non-violent crimes that harm the community as well. United States v. Madoff, 316 F. App'x 58, 59-60 (2d Cir. 2009) (affirming denial of bail pending sentencing based on danger to the pecuniary safety of the community); United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) ("We further hold that danger may, at least in some cases, encompass pecuniary or economic harm."); United States v. Persaud, 2007 U.S. Dist. LEXIS 25518, at *2-3 (N.D.N.Y. Apr. 5, 2007) (agreeing that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act" but ultimately granting the defendant pretrial release). "[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." United States v. Colombo, 777 F.2d 96, 100 (2d Cir. 1985) (quoting S. Rep. No. 225 at 7; 1984 U.S. Code Cong. & Ad. News at 3189).

Here the defendants pose a danger to the community because of their lengthy and continuing promotion of drug and financial crimes through laundering the proceeds of those offenses and returning the profit to the career criminals,

**CONCLUSION**

For the reasons set forth above, as well as any additional facts that the government will present at the detention hearing, the defendants should be held without bail pending trial.

          Respectfully submitted,

          RICHARD P. DONOGHUE
          United States Attorney

By:    /s Burton T. Ryan
      CHARLES P. KELLY
      BURTON T. RYAN, JR.
      Assistant U.S. Attorney

cc: Counsel for defendants