SERCARZ & RIOPELLE, LLP

810 SEVENTH AVENUE, SUITE 620

NEW YORK, NEW YORK 10019

1-212-586-4900

FACSIMILE 1-212-586-1234

www.sercarzandriopelle.com

ROLAND C. RIOPELLE
MAURICE H. SERCARZ*

ROBERT CALIENDO
GIULIANA E GRAHAM

*ADMITTED IN NY & NJ

November 19, 2018

**BY ECF FILING**

Hon. Joseph Bianco
United States District Judge
Eastern District of New York
United States Courthouse
100 Federal Plaza
Central Islip, NY 11722-9014

> Re: United States v. Abdulrahman Khwaja,
> Cr 18-607 (JFB)

Dear Judge Bianco:

I have been retained to represent Abdulrahman Khwaja in the above-referenced matter. I am writing to give the Court the particulars of a bail application I will be making before Your Honor tomorrow morning. I have described this bail package in general to AUSA Burton Ryan, but Mr. Ryan has told me that, in his view, the package I am proposing is not sufficient to assure the safety of the community and secure the defendant's appearance in the future. I respectfully disagree.

This is not a case in which there is a presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e)(2). To the contrary, this is a case where the burden is on the government to show that there is no set of bail conditions that will secure the defendant's appearance and the community's safety.

### A. The Proposed Bail Package

The bail package that I propose is as follows:

1) Mr. Khwaja will sign a Personal Recognizance Bond ("PRB") in the amount of $10 million;

1

2) Payment of the face amount of the bond will be secured by posting 12 properties owned by Mr. Khwaja's family, with a value in excess of $10 million;[1]

3) Mr. Khwaja's PRB will be co-signed by 8 persons who own the properties that will be posted, most of whom are family members with moral suasion over the defendant;

4) Mr. Khwaja's son, Ibraham Khwaja, and wife Zulfia Khwaja will also sign the PRB;

5) All members of Mr. Khwaja's immediate family – his wife and children – will surrender their passports to the government and agree not to obtain new passports while Mr. Khwaja remains on bail;

6) Mr. Khwaja will allow the government to monitor the bank accounts associated with his businesses, National Electronics and Ishan International, in real time, by giving the government access to the accounts used to operate those businesses, so the government can satisfy itself that Mr. Khwaja is not operating his businesses in a criminal manner. In addition, Mr. Khwaja is willing to have himself removed as a signatory on any bank account associated with his businesses;

7) The defendant will agree that his companies, National Electronics, Ishan International, Solid Wireless (which sells to domestic customers in Florida) and ISK (which deals with South American customers) will not transact any future business with persons or entities located in South America; and

8) Mr. Khwaja will agree to wear an ankle bracelet monitor and to home detention while this case is pending.

I respectfully submit that this bail package is sufficient to ensure the defendant's future appearance, and to ensure that he poses no future danger to the community, for the following reasons.

## B. Risk of Flight

The proposed bail package clearly ensures that the defendant will not flee the jurisdiction. Both he and his family will surrender their passports; the defendant will wear an ankle bracelet to monitor his whereabouts; an enormous amount of property owned by his friends and extended family will be tied up in the bail package (the defendant's own property has already been seized and is subject to forfeiture); and he will have no access to the funds of his business without full visibility for the government (the defendant's own bank accounts have also been seized an frozen).

In addition, the Court should be aware of the following facts, which also mitigate any risk of flight in this matter.

The defendant came to this country as a refugee from Afghanistan more than 30 years ago, in order to flee the Russian invasion of Afghanistan. At the time he left Afghanistan, the defendant assisted his parents, many members of his extended family, and others from his community of ethnic Uzbeks to flee Afghanistan and seek refuge here

---

[1] A schedule listing the properties and their ownership is attached as Exhibit A.

in the United States. The defendant remains a revered member of his community and a patriarch in his family, all of whom reside near to him in Syosset, New York and Farmingdale, New York. Indeed, the defendant's 93 year old father-in-law now lives across the street from him, and suffers from Alzheimer's disease. Mr. Khwaja brings his father-in-law to the mosque for religious observance every week. In addition, his son Ibrahim also lives across the street from the defendant. Having fled Afghanistan and established a life with his community and extended family here, Mr. Khwaja has no desire to go back to Afghanistan or anywhere else.

Mr. Khwaja owns no foreign property, has no overseas accounts, and he is an American citizen. He has traveled to Saudi Arabia rarely, and only for religious observance. On the rare occasions when he has traveled to Saudi Arabia, he stays in a hotel, and books his travel through a travel agent.

Moreover, every significant personal and business bank account that the defendant had access to prior to arrest has now been frozen, so the funds the defendant possessed are not available to fund a flight from this jurisdiction. Every significant asset owned by the defendant is here, and has now been restrained by the government for potential forfeiture. The defendant has no financial capacity to fund a lifestyle overseas in these circumstances.

I respectfully submit that, with his entire family here, and with the enormous amount of property posted by his family and friends to secure his appearance, there is no chance the defendant will flee the jurisdiction. Doing so would bankrupt his family and many members of his community. And lest there be any doubt about this, the defendant and his entire immediate family will surrender their passports and agree not to leave the United States while the defendant's case is pending. The bottom line here is that the defendant has no place to go, and no way to take his family with him if he wanted to go. Therefore, with so much to lose, and so little opportunity to escape, the bail package proposed is clear sufficient to ensure the defendant's future appearance in this case.

One final point must be made on the issue of "risk of flight." Approximately 18 months ago, the defendant's business operations in Florida were examined by the United States Department of Homeland Security, which recommended certain modest changes in the way the those businesses were operated. The examination of the defendant's businesses included the service of a subpoena for records, which was complied with, and significant interactions between the defendant's employees and government agents. Surely, if the defendant believed he was doing something wrong, **that** was the time to flee. But the defendant did not do so. Nor did he buy any foreign property, establish a foreign bank account, or do anything else to begin the process of fleeing the jurisdiction. Instead, the defendant went back to work here on Long Island, where he has worked and lived among his family and fellow refugees for many, many years.

3

### C. Danger to the Community

We acknowledge that the charges faced by the defendant are serious. The defendant is charged in three counts with conspiring to launder criminal proceeds (Count One), with structuring financial transactions (Count Five) and with traveling in aid of racketeering (Count Six). It is worth noting, however, that the defendant and his companies have not been charged with operating an unlicensed Money Transmitting Business (Count Two), Causing a Bank to Fail to File CTR Reports (Count Three), and Failing to File IRS Form 8300 Reports (Count Four). Based on the government's letter of November 15, 2018, and what I understand from my brief conversation with Mr. Ryan, I believe the charges against my client are based on transactions between his businesses and unrelated businesses in South America, and that the government contends that these transactions – essentially, the sale of electronics products and resulting payments to National Electronics and related entities – were used by persons in South America to launder the proceeds of narcotics transactions. I believe the bail package proposed by the defendant will allay any fears of future harm the community for the following reasons.

First, however, I think it is important to explain a bit about the defendant's business to the Court. For the last 30 plus years, the defendant has operated National Electronics and related businesses on Long Island. The defendant imports cell phones, other electronic devices and merchandise, and sells these items all over the world. He employs approximately 40 persons on Long Island. Merchandise is shipped by the defendant's companies to South America, the United States and Europe, and payments are received by the defendant's companies from those regions. The shipments of goods and receipt of payments is in many cases handled by freight forwarding companies, who deal directly with the defendant's customers, and forward the payments they receive to National Electronics and its subsidiaries, including Solid Wireless and ISK.

It bears emphasis that the defendant does not deal directly with South American customers, and he does not speak Spanish. Sales representatives for National and its related companies – primarily ISK -- deal directly with customers in South America. The defendant does not. When South American customers send funds to America, they send the funds to ISK, which is a company related to National and located in Florida. The defendant does not deal directly with the South American customers to collect the payments they owe for the merchandise they buy. Therefore, it appears to the defendant that the proof that he knew that the money paid to his companies by South Americans was narcotics proceeds is slim.

The defendant does not own or operate the other businesses named in the Indictment. Those businesses are owned and operated by Enayatulla ("Nat") Khwaja, and the defendant's business does not have any financial relationship with the businesses owned and operated by Nat Khwaja. The defendant does not sell or buy goods regularly from Nat Khwaja's businesses, and he does not loan money to or accept loans from Nat Khwaja's businesses. In many cases, the two sets of businesses owned and operated by

the defendant and Nat Khwaja actually compete with each other.

With the bail package proposed, there is no chance that the defendant will commit any future crimes. The defendant and his entire family are posting an enormous amount of property, which will be forfeited if the defendant engages in further criminal activity. In addition, the defendant is offering to give the government complete transparency into the business transactions of National Electronics and his other companies, by giving the government immediate access to the bank accounts that will be used to do further business. And the defendant and his companies will not do any business with customers in South America in the future – that business is a small part of National Electronics' total business, and the company is willing to forgo that business as part of the defendant's bail package.

Finally, I note for the record that the government's assertion that the defendant "once offered a bribe to [a] Customs agent and FDA inspector" does not tell the whole story of that incident. All charges against the defendant in connection with that incident – which occurred more than twenty years ago -- were dismissed. The Court in charge of that case saw the incident for what it was – an attempt to extort funds from the defendant by an unscrupulous government agent. The fact is the defendant has no criminal record after living in this country for more than 30 years.

Given the defendant's lack of a criminal record, and the onerous bail conditions proposed, I respectfully submit that there is no chance that he will flee the jurisdiction, and no chance that he will commit any crime in the future. The Court should release the defendant on the terms proposed.

Very truly yours,

Roland G. Riopelle

Enc.

Cc: Charles P. Kelly, Esq. (By Fax and ECF Filing)
     Burton Ryan, Esq. (By Fax and ECF Filing)